# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**United States of America,**
Plaintiff/Respondent
-vs-
**Jose Angel Beltran-Moreno,**
Defendant/Movant

CV-10-0205-PHX-NVW (JRI)
CR-05-0546-PHX-NVW

**REPORT & RECOMMENDATION**
**On Motion to Vacate, Set Aside, or**
**Correct Sentence Pursuant to**
**28 U.S.C. § 2255**

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed an Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 22, 2010 (Doc. 5). On July 21, 2010, Respondent filed its Response (Doc. 9). Movant filed a Reply on August 27, 2010 (Doc. 11).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On June 8, 2005, Movant and a number of other co-defendants (including his wife and brother) were indicted on a laundry list of charges stemming from a drug smuggling operation. (CR Doc. 1) An Amended Indictment (CR Doc. 43) was filed July 6, 2005, charging Movant with the following counts: (1) (conspiracy to possess with intent to distribute methamphetamine, heroin, and cocaine base); (3), (4), and (8) (possession with

1  intent to distribute methamphetamine); (5) (possession with intent to distribute heroin); (6)

2  (possession with intent to distribute cocaine base); and (7) and (10) (possession of a firearm

3  in furtherance of a drug trafficking crime).  Counsel Eugene Marquez was appointed and trial

4  was set for August 9, 2005. (M.E. 7/13/05, CR Doc. 58)

5  **Representation by Montano**  - On August 4, 2005, retained counsel Jose Montano

6  appeared, and successfully moved for a trial continuance until September 20, 2005.  (CR

7  Docs. 83, 84, 87, 90, 92.)

8  Movant requested a settlement conference (CR Doc. 133) which was held on March

9  21, 2006, with Movant present (M.E. 3/21/2006, CR Doc. 137).   A second settlement

10  conference as to a number of defendants was held August 1, 2006, including Movant.

11  Movant was represented by attorney Joel Thompson on behalf of counsel Montano (CR Doc.

12  159).

13  On October 5, 2006, another status conference was held with Movant absent but

14  represented by Montano.  (Exhibit B, R.T. 105/06 at 4.)  The trial date was reset for February

15  6, 2007.  (*Id.* at 17-18.)

16  On November 1, 2006, counsel Montano withdrew and on November 6, 2006,

17  attorney Marquez was reappointed.  (CR Docs. 207, 208.)

18  **Plea Negotiations** - The matter was set for a status conference on December 18, 2006.

19  (CR Doc. 217).  In the interim, Movant was set for a change of plea hearing on December

20  4, 2006 (CR Doc. 219).  Movant appeared with counsel Marquez, and advised that he did not

21  wish to proceed with a guilty plea at that time.  (CR Doc. 226, M.E. 12/4/06.)

22          MR. MARQUEZ: Good afternoon, Your Honor. Eugene
23  Marquez on behalf of Jose Beltran-Moreno, who is present.  He's in
    custody.
24          I know today is the date set for a possible change of plea.
    My client has indicated that he wishes not to enter into the plea today,
    that he feels rather distraught psychologically.
25          THE COURT: Al right.  I understand.
            MR. MARQUEZ: Due to his wife's sentence that he has
26  recently learned of today.
            THE COURT: Is this the matter that he - - well, I
27  understand.  So I assume if he decides that he does not want to proceed
    with the plea agreement, you will let the Court know if he decides.
28          What do you want me to do?  Do you want me to set

- 2 -

1     another date for a plea agreement with the understanding he may advise the Court later [if] he wishes to withdraw from it?

2              MR. MARQUEZ: If the Government would leave the plea available, on the table, then we would ask that it be reset. I will let

3     the Government speak for itself.

             THE COURT: All right.

4              MR. LARSON [the prosecution]: Judge, at this time we had offered this plea agreement, this plea offer, many many months ago

5     with the previous counsel. And we have had repeated meetings with this defendant as well as repeated meetings in this case of a settlement

6     nature trying to get this thing moved along.

             At this point, Your Honor, I think I'm going to move - -

7     I'm going to withdraw the offer at this time. I don't - - I have a trial date of February 6th, and I believe that we should just start, at this point,

8     preparing for trial. And if the defendant wants to come back in at some other point, we could address it at that point. But there would not be an

9     offer on the table.

10 (Exhibit E, R.T. 12/4/06 at 2-3.) The change of plea was vacated. (CR Doc. 2226, M.E.

11 12/4/06.)

12       On December 18, 2006, Movant appeared for the status conference, with attorney

13 Bruce Stirling appearing for attorney Marquez on Movant's behalf as well as co-defendant

14 Jorge Camacho. The Court affirmed the trial date of February 6, 2007 but noted Movant's

15 counsel's intent to file a motion to continue trial. (CR Doc. 244, M.E. 12/18/06.) The Court

16 confirmed no plea offers were outstanding.

17              THE COURT: Have the offers that have been made and rejected, are they fully withdrawn, or did they remain open for any

18 period of time?

             MR. LARSON: They are full withdrawn at this time.

19 (Exhibit C, R.T. 12/18/06 at 4.)[1]

20              THE COURT: All right. Couple of things. First, I want

21 to speak to all five of the defendants. And I just want to make sure each of you understand that you all have -- the government has the burden

22 of proving to a jury that you are guilty of the offenses with which you are charged and the burden of proving that beyond a reasonable doubt.

23              The government also, in its discretion, can offer a plea agreement with you that might result in a plea of guilty with a sentence

24 that may be less than you might receive if you went to trial. But the prosecutor has told us here on the record that he has made those offers,

25 that all five of you have rejected them, and the prosecutor does not intend to make those offers again.

26              Is that correct, Mr. Larson?

27

28 [1] This transcript erroneously reflects that it is from December 18, 2007, rather than 2006.

1

        MR. LARSON: That is correct, Your Honor.
              THE COURT: All right. So, and again, I want to make
2    sure that all five of you understand that. If any of the five of you do not
     understand that, would you please raise your and? All right. I see no
3    one raising their hand.
              I also said that I set my own deadline for a plea
4    agreement. That doesn't mean that the government has to make a further
     plea agreement. I will set a deadline just as a matter of formality so that
5    really, the deadline I am setting is the deadline on both the prosecutor
     and the defendants. But I have no reason to think that the prosecutor
6    will renew the offers that have been made and rejected for plea
     agreements.
7              So I wouldn't want any of the five of you to have a
     misunderstanding that any plea agreements will be offered because the
8    government is telling me that they are not doing that.

9    (*Id.* at 13-15.)

10        Counsel filed the Motion to Continue (CR Doc. 248), and trial was reset for March

11   27, 2007 (CR. Doc. 249).

12        On January 9, 2007, counsel wrote to Movant to confirm the trial date and to schedule

13   a meeting with Movant.  Counsel added:

14        The judge has indicated that he will not accept any plea agreement or
          deal after January 19, 2007. Moreover, the prosecutor has indicated that
15        he is no longer willing to offer you the 10-15 year deal, the one that you
          have rejected on various occasions; you and I have discussed this topic
16        in detail, and the risks that you are facing if you lose at trial; having
          knowledge of the possible consequences (up to life imprisonment), you
17        indicated that you would not accept the deal (because it's a lot of time,
          because you don't want to lose appeal rights, that you want more time
18        to think about it, etc.).

19   (Exhibit D, Marquez Letter; Exhibit A, Marquez Affid. at ¶ 7.)

20        **<u>Co-Defendant's Plea Hearing</u>** - On January 11, 2007, co-defendant Abraham Beltran

21   -Moreno, aka Adrian Beltran-Figueroa, appeared with counsel for a change of plea.  Counsel

22   advised the court that the defendant did not want to accept the plea offer.  The defendant

23   explained that he was requesting a better plea offer and there were some disagreement with

24   the allegations.  The Court and counsel discussed the impending plea deadline and likelihood

25   that a plea would not be available in the future.  A recess was granted to allow counsel and

26   the defendant to discuss the matter.

27        Upon returning, the defendant indicated he was willing to accept the plea offer.

28   Provisions requiring guilty pleas by all defendants were removed, and the Court proceeded

- 4 -

through a plea colloquy but ultimately concluded that the defendant would not admit to the facts supporting the plea. Accordingly, the plea agreement was rejected. (Exhibit F, R.T. 1/11/07.)

**<u>Movant's Plea</u>** - On January 25, 2007, counsel Marquez moved to withdraw as counsel for Movant on the basis of a breakdown in communications. (CR Doc. 273.) A hearing was held (CR Doc. 287), and the motion was eventually denied (CR Doc. 289).

A series of pretrial motions ensued, and the Court set the matter for a status conference on March 8, 2007 as to Movant and co-defendant Beltran-Figueroa. At that hearing, counsel indicated Movant and Beltran-Figueroa wanted to plead to the charges. The Court initially set the matter for the next day for a change of plea, but then offered for it to be held that same day. (CR Doc. 333.)

Movant represented that he had had an opportunity to thoroughly discuss his case with counsel, that he was satisfied with counsel's representation, there was nothing more counsel should have done, he had discussed the charges with counsel, he had discussed whether to plead guilty, and counsel had answered all questions. (Exhibit G, R.T. 3/8/07 at 30-32.) Movant represented that there were no promises or agreements about sentencing, no threats or force used, and that he was pleading guilty voluntarily with the advice of counsel. (*Id.* at 32-33.) Movant then pled guilty to the charges, with no plea agreement, and the plea was accepted. (*Id.* at 68-69; CR Doc. 335.)

Co-Defendant Beltran-Figueroa was permitted to plead to a subset of the charges against him (omitting some of the gun counts), with the government dismissing the balance. The prosecutor described its rationale in this approach as "creat[ing] equality for both defendants in looking at the conspiracy charge and two gun counts." (Exhibit G, R.T. 3/8/07 at 7.)

**<u>Sentence</u>** - On July 26, 2007, Movant was found guilty on the following counts: (1) (conspiracy to possess with intent to distribute methamphetamine, heroin, and cocaine base); (3), (4), and (8) (possession with intent to distribute methamphetamine); (5) (possession with intent to distribute heroin); (6) (possession with intent to distribute cocaine base); and (7) and

(10) (possession of a firearm in furtherance of a drug trafficking crime). Movant was sentenced to a combined term in prison of 420 months, consisting of concurrent sentences of 300 months on counts (1), (3), (4), (6), and (8); a concurrent sentence of 60 months on count (5); and consecutive sentences of 60 months on counts (7) and (10). (CR Doc. 392.)

## B. PROCEEDINGS ON DIRECT APPEAL

Movant filed, through counsel, a direct appeal challenging his sentence on the weapons charges and asserting that the combined sentence was an abuse of discretion. The Ninth Circuit noted that the district court had erred, but all the errors were in Movant's favor, and that had the Government not foregone an appeal, a mandatory minimum sentence of forty years would have applied, and a life sentence would have been advised under the sentencing guidelines. (CR Doc. 533, Opinion.)

## C. PRESENT MOTION TO VACATE

**Petition** - Movant commenced the current case by filing his original Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on January 28, 2010 (Doc. 1). Prior to screening, on February 22, 2010, he filed his Amended Motion (Doc. 5.) Movant's Motion asserts the following two grounds for relief:

    (1)    "Violation of Movant's Fifth Amendment right to due process, both during the District Court proceedings and on Direct Appeal to the Ninth Circuit Court"; and

    (2)    "Violation of Movant's Sixth Amendment right, under the U.S. Constitution to the effective assistance of counsel during the District Court proceedings and on Direct Appeal."

**Response** - On July 21, 2010, Respondents filed their Response (Doc. 9), arguing that Movant's claims are without merit because: (1) counsel provided reasonable representation and Movant's plea was knowing and voluntary; and (2) counsel was not ineffective.

**Traverse** - On August 27, 2010, Movant filed a Traverse, arguing the merits of his

claims.

### III. APPLICATION OF LAW TO FACTS

### A. GROUND ONE: DUE PROCESS

For his Ground One, Movant argues that he was denied due process when he was permitted to plead guilty under the mistaken belief that he was pleading guilty under the benefit of the proposed written plea agreement, and he is entitled to specific performance of the plea agreement. (Amend. Mot. Doc. 5 at 11-12.) Alternatively, Movant argues that the plea was not entered knowingly and voluntarily because: (1) Movant was not present at his brother's plea hearing; (2) Movant's plea was coerced; (3) Movant was "rushed" to plead; (4) Movant was threatened by counsel with loss at trial; (5) counsel led Movant to believe that he was pleading under the proposed written plea agreement. (*Id.* at 12-16.)

**Applicability of Plea Agreement** - Plaintiff argues that he is entitled to specific performance of the proposed written plea agreement. When a guilty plea rests in any significant degree on an agreement with the government, the agreement must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Anderson*, 970 F.2d 602, 607 (9th Cir. 1992), *amended on other grounds*, 990 F.2d 1163 (9th Cir. 1993); *United States v. Travis,* 735 F.2d 1129, 1132 (9th Cir. 1984). However, plea agreements are contractual by nature and are measured by contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). A cardinal principle of contract law is that once an offer has terminated, e.g. by rejection by the offered or withdrawal by the offeror, it may not later be accepted. Rest. 2d Contr. § 36 (2011). *See e.g. U.S. v. Aguilera*, 654 F.2d 352 (5th Cir. 1981) (plea offer withdrawn prior to acceptance not subject to specific performance).

In this case, the only offer made was withdrawn on December 4, 2006. (Exhibit E, R.T. 12/4/06 at 2-3. *See also* Exhibit C, R.T. 12/18/06 at 4.) At the December 18, 2006

hearing, the prosecution reiterated that no unaccepted plea offers were available:[2]

> MR. LARSON: Your Honor, at this point, the government - - all of the plea offers that were presented were rejected by the defendants in the courtroom today, and the government has been asked by several of the attorneys whether there would be any other offers forthcoming. There will not be any offers forthcoming from the government.
> And so at this point, the status is that unless there was a plea to the indictment, we will be proceeding to trial in this matter.
> THE COURT: Have the offers that have been made and rejected, are they fully withdrawn, or did they remain open for any period of time?
> MR. LARSON: They are fully withdrawn at this time.

(R.T. 12/18/06, CR Doc. 429 at 4.)    After being advised that several defendants had expressed that they did not want to go to trial and did not want to take the plea offer, the Court explained there was no third alternative available, and clarified the status of the plea offers with all defendants:

> THE COURT: ... The government also, in its discretion, can offer a plea agreement with you that might result in a plea of guilty with a sentence that may be less that you might receive if you went to trial. But the prosecutor has told us here on the record that he has made those offers, that all five of you have rejected them, and the prosecutor does not intend to make those offers again.
> Is that correct, Mr. Larson?
> MR. LARSON: That is correct, Your Honor.
> THE COURT: All right. So, and again, I want to make sure that all five of you understand that. If any of the five of you do not understand that, would you please raise your hand? All right. I see no one raising their hand.
> I also said that I set my own deadline for a plea agreement. That doesn't mean that the government has to make a further plea agreement. I will set a deadline just as a matter of formality so that really, the deadline I am setting is the deadline on both the prosecutor and the defendants. But I have no reason to think that he prosecutor will renew the offers that have been made and rejected for plea agreements.
> So I wouldn't want any of the five of you to have a misunderstanding that any plea agreements will be offered because the government is telling me that they are not doing that.

(*Id.* at 14-15.)

---

[2] Movant complains that his attorney, Mr. Marquez, was absent at the December 18, 2006 hearing. (Traverse, Doc. 11 at 2.) However, Mr. Marquez had arranged for Mr. Stirling to represent Movant at the hearing. (R.T. 12/18/06, CR Doc. 429 at 3.) Movant does not suggest any specific harm from the substitution nor suggest that Mr. Stirling's performance was inadequate.

Moreover, the Court and prosecution specifically clarified that Movant understood the status of the plea offer:

> MR. LARSON: Judge, what happened in this case was there was the intention to require Mr. Jose Angel Beltran-Moreno and Adrian Beltran-Moreno, the two brothers in this case, a 15 year stipulated sentence. That was sent in a letter to their defense attorneys . . . That [plea] deadline came and went...And at that time, that plea agreement was rejected by Mr. Beltran-Moreno, and I withdrew the plea offer at that time.
>
> THE COURT: So it sounds to me clear that you were offering, you were offering but are no longer offering a plea agreement that would have led to the sentencing judge's discretion. But the sentence would be no more than 180 months.
>
> MR. LARSON: Yes, sir.
>
> THE COURT: But that offer is now expired and will not be renewed. Is that what you are saying?
>
> MR. LARSON: It was rejected, and I did not renew it.
>
> THE COURT: Mr. Stirling, do you think Mr. Marquez's client understands that? Could you chat with him and be clear.
>
>          * * *
>
> (Discussions off the record.)
>
> MR. STIRLING: Your Honor, he said he understood that.

(R.T. 12/18/06, CR Doc. 429 at 22-24.)

The withdrawal of all plea offers was reiterated to Movant in counsel's letter of January 9, 2007. (Exhibit D.)

Further, at the December 18, 2006 status conference, the Court clarified with defendants that it would enforce a January 19, 2007 deadline on any plea agreements:

> THE COURT: ... You know, Mr. Larson, I have had a practice in the last year or so of setting my own plea deadlines on the theory that every once in a while I have had assistant US attorneys after a day at trial, offer something after having sworn on a stack of United States Codes that they would never do that.
>
> So I think when we get down to this, I'm going to set my own time. Not that I doubt your resolve, but I just am doing that as a universal practice now.

(R.T. 12/18/06, CR Doc. 429 at 4.)

> THE COURT: . . It is ordered the Court will not accept any plea agreements after January 19. Obviously the defendants are free to plead guilty to the charges at any time before the jury returns a verdict. But I will not accept any plea agreements after January 19.

(*Id.* at 28.) That deadline was reiterated to Movant in counsel's letter of January 9, 2007.

(Exhibit D.)[3]

Thus it was repeatedly made plain to Movant that there was no plea agreement and no plea offer, and none would be permitted by the Court after January 19.

Absent some detrimental reliance by Movant on an outstanding offer,[4] the prosecution was free to withdraw its offer and to decline to make any future offer. "But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977). "Plea bargaining is not a constitutional right; the Government can refuse to bargain altogether, and can thus cut off or limit negotiations if it chooses to do so." *U.S. v. Herrera,* 640 F.2d 958, 962 (9th Cir. 1981).

Moreover, the previous offer (and its withdrawal) do not somehow turn Movant's subsequent bare guilty plea into a due process violation. In *Mabry v. Johnson*, 467 U.S. 504, 511 (1984), the prosecution made a plea offer, and then reneged when the defendant tried to accept. Subsequently, the defendant accepted a less favorable plea agreement, pled guilty, and then argued his plea was obtained in violation of due process.

> Thus, because it did not impair the voluntariness or intelligence of his guilty plea, respondent's inability to enforce the prosecutor's offer is without constitutional significance.

_____

[3] At the time of Movant's plea, the Court broached the subject of the wisdom of its policy of imposing such deadlines, especially where a defendant was willing to plead to the charges but the government might desire to negotiate for a waiver of appeal rights. The government's response suggested that it was not concerned, and was content to proceed with the pleas to the charges. (*See* Exhibit G, R.T. 3/8/07 at 4-6.)

[4] Movant does argue that detrimental reliance on a promise by the prosecution in the plea bargaining process would make the promise binding. (Amend. Mot. Doc. 5, Memo at 10.) It is true that the prosecution may be estopped from withdrawing from a plea agreement even before its acceptance by the court, where there has been detrimental reliance by the defendant. *U.S. v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). However, Movant fails to point to any promise by the prosecution. There was merely an offer made in this case, and the offer was withdrawn and never accepted. Further, Movant fails to point to any detrimental reliance on the offer, *e.g.* admissions make, etc. Instead of relying on the offer, Movant persistently declined to accept it, until it was withdrawn. "In the present case, however, [defendant] did not detrimentally rely on the plea agreement; he did not plead guilty based on the agreement and he did not provide any information or other benefit to the government based on the agreement." *Id.*

- 10 -

Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty

*Id.* at 511.

**Due Process in Pleas** - "Due process requires a defendant's guilty plea to be 'equally voluntary and knowing,' and such plea must reflect 'an intentional relinquishment or abandonment' of his privilege against self incrimination, his right to trial by jury, and his right to confront his accusers." *U.S. v. Escamilla-Rojas,* 640 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks and citation omitted).

The Supreme Court has stated that "[w]here, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. . . . [A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective].' " *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (internal quotation marks and citation omitted).

As discussed hereinafter, Movant has failed to demonstrate that counsel's advice or representation was defective. Consequently, Movant has failed to establish that the entry of his guilty plea was a violation of his due process rights.

Therefore, Ground 1 is without merit, and should be denied.

## B.  GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts that his guilty plea was brought about by the defective representation of trial counsel.  To sustain such a claim, Movant "must show that: (1) his attorney's performance was unreasonable under prevailing professional standards; and (2) that there is

a reasonable probability that but for counsel's unprofessional errors, the result would have been different.' " *U.S. v. Rivera-Sanchez,* 222 F.3d 1057, 1060 (9th Cir. 2000) (considering due process claim where plea offer rejected, and bare guilty plea entered thereafter).

In an attempt to show that counsel was ineffective, Movant argues:  (a) Movant was not present at his brother's plea hearing; (b) Movant's plea was the result of coercion by trial counsel; (c) Movant was "rushed" to plead; (d) counsel led Movant to believe that he was pleading under the proposed written plea.   (Amend. Mot. Doc. 5, Memo at 12-16.)  In addition, Movant makes broad allegations that counsel was ineffective because of (e) his "inactions, lack of legal research, legal advice and improperly litigating Movant's case as a diligent advocate." (*Id.* at 21.)  Further, (f) Movant extends his claims to assertions that counsel was ineffective on direct appeal. (*Id.* at 21.)

**a. Effect of Absence from Co-Defendants' Plea Hearings** - Movant complains that counsel failed to have Movant present at the January 11, 2007 court proceedings concerning the attempted change of plea by Movant's brother and co-defendant, Abraham Beltran-Moreno's. (Amend. Mot., Doc. 5, Memo. at 2, 9-10.)  Movant argues that his presence at that hearing would have provided him an opportunity to "understand the concepts of the agreement on the record."  Movant argues that had he been at the hearing "the Court [could have] considered his own factual basis."[5]  (Traverse, Doc. 11 at 3.)

Movant may now imagine that had he been at the hearing, and seen his brother attempt to plead guilty with benefit of a plea agreement, that he would have repented of his rejection of the offer and had his attorney cajole the prosecutor into cutting a new plea deal, as had his brother.  But those imaginings do not amount to a denial of due process.  Movant's argument may sound seductive,[6] but Movant has not offered anything to suggest that those

---

[5]  The absence of a factual basis is itself irrelevant, since a factual basis did not become necessary until Movant entered a guilty plea.  The undersigned understands this reference to be an indication that the process of going through a factual basis would have helped Movant understand how the charges applied to him.

[6]  To the extent that Movant might intend to assert a free standing claim based upon his absence, (and assuming he had a right to be present at a co-defendant's plea hearing) that

imaginings have any basis in reality, and they make a variety of unsupported presumptions.

Movant's plea offer had been withdrawn by the Government over a month before that January 11, 2007 hearing.  (*See* Exhibit E, R.T. 12/4/06 at 2-3.)   The prosecution was adamant that no unaccepted plea offer was on the table after December 4, 2006.  (Exhibit E, R.T. 12/4/06 at 2-3.)  This was re-affirmed at the December 18, 2006 hearing.  (Exhibit C, R.T. 12/18/06 at 4.)  It was communicated to Plaintiff in counsel's letter of January 9, 2007 (Exhibit D).[7]  While the Government's willingness to enter into a belated plea agreement with Movant's brother suggests it may have been willing to do so with Movant, Movant proffers nothing else to establish that the plea agreement actually remained available to him.

Moreover, Movant was consistent in his determination to not plead guilty.  Counsel's letter to Movant on January 9, 2007 confirmed with Movant that "having knowledge of the possible consequences (up to life imprisonment), you indicated that you would not accept the deal (because it's a lot of time, because you don't want to lose appeal rights, that you want more time to think about it, etc.)."  (Exhibit D, Marquez Letter; Exhibit A, Marquez Affid. at ¶ 7.)  Counsel discussed the plea offer repeatedly with Movant, as did co-defendant's counsel, Mr. Stirling, at the December 18, 2006 hearing.  Movant points to nothing peculiar in co-defendant's plea hearing that would have altered his perceptions. Indeed, the fact that co-defendant's plea was ultimately rejected for a lack of factual basis makes it even less likely that Movant's presence would have made a difference.

Most importantly, Movant points to no specific deficiency in counsel's advice. His argument amounts to nothing more than an assertion that had Movant been counseled one more time, he would have changed his mind.  Once counsel has made reasonable efforts to

claim was waived by his subsequent guilty plea, making his absence relevant only to the extent that it precluded him from making a knowing and voluntary decision to plead guilty. *See U.S. v. Broce*, 488 U.S. 563, 573 (1989).

[7] Neither party explains by what process co-defendant Abraham Beltran-Figueroa was again extended a plea offer so as to attempt to plead under it on January 11, 2007.  However, neither is there any explanation by Movant why he presumes such an opportunity would have been available to him after the January 11, 2007 hearing.

explain a plea offer to his client, he is not required to repeatedly present the offer in every conceivable context and through the Court and co-defendants, on the off chance that his client may finally grasp his predicament and understand the value of the plea offer.

**b. Coercion** - Movant argues he was "'coerced' to plea [sic] guilty straight to the court March 8, 2007." (Amend. Mot. Doc, 5, Memo at 14.) Movant argues that his "plea was involuntary due to his counsel's threat's that if he did not take the 3/8/07 straight plea to the court, he would for sure lose at trial and implied he just might not be able to help him in a trial." (*Id.* at 15.)

Movant offers nothing to suggest that counsel's advice was incorrect. For example, Movant points to no viable defense at trial. A frank assessment of a defendant's limited chances at trial does not amount to ineffective assistance or coercion. *See U.S. v. Crank*, 438 F.2d 635, 637 (9th Cir. 1971) (not coercion where counsel told defendant that "he did not have 'a leg to stand on' and should enter a guilty plea"). Nor is coercion shown from the mere fact that Movant was between a rock and a hard place, where he did not wish to proceed to trial and did not wish to plead guilty. "[B]eing forced to choose between unpleasant alternatives is not unconstitutional." *U.S. v. Kaczynski*, 239 F.3d 1108, 1115-1116 (9th Cir. 2001).

Moreover, Movant affirmatively represented that his plea was voluntary:

> THE COURT: Has anyone made any promises or agreement with you about what your final sentence will be?
> DEFENDANT BELTRAN-MORENO: No.
> DEFENDANT BELTRAN-FIGUEROA: How was that?
> THE COURT: Let me ask that again. Has anyone made any promises or agreements with you about what your final sentence will be?
> DEFENDANT BELTRAN-MORENO: No.
> DEFENDANT BELTRAN-FIGUEROA: We were just told from what to what, that's all.
> THE COURT: Yes. And I will come to that a little bit later. But did anyone tell you that your final sentence would be anything less than the highest sentence that the law might permit?
> DEFENDANT BELTRAN-MORENO: No.
> DEFENDANT BELTRAN-FIGUEROA: No.
> THE COURT: Were any threats made or force used to get you to plead guilty?
> DEFENDANT BELTRAN-MORENO: No, sir.
> DEFENDANT BELTRAN-FIGUEROA: No.

THE COURT: Do you understand that you do not have to plead guilty if you do not want to?

      DEFENDANT BELTRAN-MORENO: Yes, sir.

      DEFENDANT BELTRAN-FIGUERO: Yes.

      THE COURT: Are you pleading guilty voluntarily and of your own free will with the advice of your lawyer?

      DEFENDANT BELTRAN-MORENO: Yes, sir.

      DEFENDANT BELTRAN-FIGUEROA: Yes.

(Exhibit G. R.T. 3/8/07 at 32-33.) "These solemn declarations made in open court carry a strong presumption of verity." *U.S. v. Rivera-Ramirez*, 715 F.2d 453, 458 (9th Cir. 1983) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Movant has failed to show that his plea was coerced, or that counsel performed deficiently in this regard.

    **c. Adequate Time to Consider** - Movant complains that he was rushed to enter a guilty plea. In support of this argument, Movant points to the fact that the hearing originally scheduled for March 8, 2007 was a pretrial status conference, not a change of plea, and yet he entered his plea on that date. However, the record reflects that Movant had already decided to plead guilty before that hearing began, and a hearing for the plea had been set:

> MR. MARQUEZ: Your Honor, if I could raise another issue before the Court continues on the pending substantive issues. My client has indicated that - - - a desire to plead to the Court, plead guilty to the counts in the Indictment. There is a proposed change of plea hearing scheduled for next Tuesday at 2:00 p.m. but he has indicated that he is going to go forward pleading guilty to those charges.

(Exhibit G, R.T. 3/8/07 at 4.)

The charges in this case had been pending for over 20 months at the time of Movant's plea. Movant had reviewed the prior plea offer and his exposure at trial with counsel on November 11, 2006 for 1.3 hours; on December 4, 2006; on December 7, 2006 for 1.2 hours; on January 18, 2007 for 0.9 hours; on January 26, 2006 for 0.5 hours. (Exhibit A, Marquez Affix. at 3-4.)

Counsel's affidavit reflects that he met with Movant for 0.9 hours on March 8, 2007 to prepare for the conference and to discuss the possible plea to the charges. (Exhibit A, Marquez Affix. at 5.) Moreover, between the initial portion of the March 9, 2007 hearing and the entry of Movant's plea, the Court recessed for over 40 minutes to permit the

defendants to prepare for entering their pleas.   (Exhibit G, R.T. 3/8/'07 at 24, reflecting Court recessed at 14:23:58 and resumed at 15:05:24.)

Movant represented to the Court at his plea hearing that he had had an "opportunity to thoroughly discuss [his] case with [his] lawyer," had "reviewed the Superseding Indictment, the written charges pending against [him], and fully discussed the charges with [his] lawyer," and had "fully discussed whether to plead guilty with [his] lawyer before doing so." (*Id.* at 30-32.)

Finally, there is no indication that Movant was rushed by the Court. The Court had originally reset Movant's plea for the following day, then offered to do it the same afternoon, and gave Movant the option whether or not to proceed that same day. Counsel advised the Court that Movant "would like to do it today." (Exhibit G, R.T. 3/8/07 at 22.)

Movant fails to proffer anything beyond his bare allegation to suggest that he did not have adequate time to consider his plea.

**d. Misrepresentation re Applicability of Plea Agreement** - As an alternative to his due process argument in Ground One that there was an enforceable plea agreement , Movant argues that counsel performed defectively by advising him there was an agreement in place, when there was none. Movant argues that he was "'swiftly' counseled 'during the court proceedings' with the misapprehension that he would receive a sentence that was only reasonable, i.e. a 10-15 year sentence due to his voluntary guilty plea in conformance with his expectations under the previous written plea agreement." (Amend. Mot., Doc. 5, Memo. at 16.)  Movant offers nothing to support his contention that he was told his plea was to be under the benefit of the then withdrawn plea offer, and its 10-15 years sentence.

During his plea hearing, the Court had the prosecution review the possible penalties for each count, which were: (1) "up to life" and "mandatory minimum is ten years"; (3) "maximum term is life"; (4) "maximum term is life"; (5) "maximum term is 40 years and mandatory minimum is five years"; (6) "maximum term of imprisonment is life" and "mandatory minimum of 10"; (7) "maximum term is life" and "minimum term is five years...consecutive to any other sentence"; (8) "maximum term is life and mandatory

minimum is 10 years"; (10) "maximum term of imprisonment is life" and "mandatory minimum is five years...consecutive to any and all other sentences imposed". (Exhibit G, R.T. 3/8/07 at 40-42.) Assuming all sentences were at their minimum, the result was at least ten years for the potentially concurrent sentences, plus two consecutive minimum sentences of five years each, mandating an effective sentence of at least 20 years (10 plus 5 plus 5). Thus, the absolute minimum sentence was beyond the 10-15 years to which Movant asserts he was led to believe he was agreeing.

As evidence that he was told a plea offer remained open, Movant points to the fact that at the March 8, 2007 hearing, the Court stated: "Until the moment I have accepted a plea, everybody is in the case still." (Traverse, Doc. 11 at 6-7.) The context of that statement makes clear that no hope of a plea offer was extended, but the statement was to clarify that despite having a change of plea scheduled, Movant and his counsel were still required to participate in the pretrial planning process:

> MR. MARQUEZ: Your Honor, if I could raise another issue before the Court continues on the pending substantive issues. My client has indicated that - - a desire to plead to the Court, plead guilty to the counts in the Indictment. There is a proposed change of plea hearing schedule for next Tuesday at 2:00 p.m. but he has indicated that he is going to go forward pleading guilty to those charges.
> THE COURT: All right. I appreciate being so advised, Mr. Marquez. I need to have you here. Until the moment I have accepted a plea, everybody is in the case still.
> MR. MARQUEZ: Correct.

(Exhibit G, R.T. 3/8/07 at 4.)

Movant also points to the fact that Mr. Marquez's affidavit states that during his meetings with Movant on January 18 and 25, 2007 they discussed "the plea agreement" and "the option of accepting the original plea agreement, which the Government continued the [sic] extend and which Defendant ultimately rejected." (Exhibit A, Marquez Affix. at 4.) (*See* Travers, Doc. 11 at 7.) While counsel does not elucidate in the affidavit, the record as a whole makes it abundantly clear that counsel was under no delusions at least as of January 9, 2007 that the offer had been terminated. He clearly communicated in his letter to Movant of that date that the offer no longer was available. (Exhibit D.)

At the January 18, 2007 meeting (with the Court's plea deadline one day away), one would have expected counsel to again point out the advantages of the prior plea offer, in the hopes that Movant would finally agree to it, and the prosecution would continue to be willing a settlement on the same terms, so that a plea agreement could be made before the deadline.

At the January 25, 2007 meeting, it would be neither surprising nor defective performance for counsel to explain on those later dates that the plea offer had been a good deal, due to Movant's intransigence it was no longer available, and all that was left was to obtain the lesser advantages of a plea to the indictment.

Movant himself makes no avowal that at either meeting counsel affirmatively represented to him that the plea offer was still available, nor does Movant proffer any explanation made by counsel to explain the discrepancy from such a representation and his then recent, explicit letter on the point, and the history of in-court representations by the prosecution to the contrary.

Most convincingly, as discussed herein above, Movant affirmatively asserted to the Court at the time of his plea that no promises about sentencing had been made to induce his plea. (Exhibit G, R.T. 3/8/07 at 32.) "These solemn declarations made in open court carry a strong presumption of verity." *U.S. v. Rivera-Ramirez*, 715 F.2d 453, 458 (9th Cir. 1983) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Movant's assertions to the contrary in this proceeding are palpably incredible.

In sum, Movant offers nothing of substance to support his assertion that he was led to believe he was pleading guilty with the benefit of the withdrawn plea offer.

**e. Inadequate Preparation** - Finally, Movant complains that counsel was ineffective because of (e) his "inactions, lack of legal research, legal advice and improperly litigating Movant's case as a diligent advocate." ( Amend. Mot, Doc. 5, Memo at 21.) In the context of attacks on the voluntariness of a guilty plea, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change

his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Movant proffers no specifics about what additional steps counsel should have taken, nor does Movant offer anything to show that the steps would have altered counsel's advise to Movant about pleading guilty. "It is well-established that mere conclusory allegations are not sufficient to warrant relief under a 2255 motion." *Stein v. U.S.*, 390 F.2d 625, 627 (9th Cir. 1968).

**f.  Appellate Counsel** - Movant asserts that counsel was ineffective "during the District Court proceedings and on Direct Appeal." (Amend. Mot. Doc. 5 at 6. *See also id.* at 2, 21, 23) Any ineffectiveness of appellate counsel would have been subsequent to Movant's entry of his guilty plea, and thus could not have impacted its voluntariness. Movant fails to suggest how counsel was ineffective on direct appeal.[8] Movant's conclusory allegations are not sufficient to support a claim for relief under § 2255.

**SUMMARY** - Movant fails to show any deficient performance by counsel. Consequently, his Ground Two is without merit and should be denied.

## C.  EVIDENTIARY HEARING

Movant argues that he should be granted an evidentiary hearing to support his claims.

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States*

---

[8] It might be argued that appellate counsel performed deficiently by appealing what was an illegal sentence in Movant's favor, thus potentially subjecting Movant to the risk of a much higher sentence. However, no prejudice to Movant resulted from that appeal, as the Court declined to correct the error in the absence of an appeal by the Government.

*v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir.1998). Mere conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied*, 451 U.S. 938 (1981). The Ninth Circuit has recognized that even when credibility is at issue, no evidentiary hearing is required if it can be " 'conclusively decided on the basis of documentary testimony and evidence in the record.' " *Shah v. U.S.*, 878 F.2d 1156, 1159 (9th Cir. 1989) (quoting *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir.1989)).

For the reasons discussed herein above, Movant's claims are supported only by conclusory statements, or may be conclusively decided on the basis of the record available. Moreover, Movant makes no suggestion what additional evidence could be adduced at an evidentiary hearing to support his claims.

Accordingly, the undersigned concludes that an evidentiary hearing on Movant's claims is not required.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255. The recommendations if accepted will result in Movant's Motion to Vacate being resolved adversely to Movant. Accordingly, a decision on a certificate of Appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the constitutional claims are plainly without merit. Accordingly, to the extent the reasoning of this Report & Recommendation is adopted, the certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 22, 2010 (Doc. 5) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to

file a response to the objections. Pursuant to *Local Civil Rule 7.2(e)(3)*, unless otherwise permitted by the Court, an objection to a Report and Recommendation shall not exceed ten (10) pages. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

DATED: August 5, 2011

_____
JAY R. IRWIN
United States Magistrate Judge